IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | | |
|---|---|---|
| BORIS FUENTES, et al. | * | |
| Plaintiffs | * | |
| v. | * | Case No.: 8:13-cv-03093 JFM |
| THE ENVIRONMENTAL GROUP, INC., et al. | * | |
| | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION OF AN FLSA COLLECTIVE ACTION AND FOR IDENTIFICATION AND NOTIFICATION OF POTENTIAL CLASS MEMBERS**

**INTRODUCTION**

Plaintiffs' motion is based on a restatement of the allegations in their bare-bones complaint and a threadbare Declaration from Mr. Fuentes which is contradicted by the very documentary evidence that is attached to it.  Plaintiffs' unsupported conclusions and meager evidentiary support fall far short of meeting the minimal burden established by the Fourth Circuit for conditional certification of a collective action under the FLSA.  Consequently, Plaintiffs' Motion for Conditional Certification must be denied.

Furthermore, Plaintiffs' request for information regarding potential class members is overbroad and without support, and the proposed Notice attached to Plaintiffs' motion lacks material information.

## LEGAL STANDARD

An employee may maintain a collective action against his or her employer for violations of the FLSA pursuant to 29 U.S.C. § 216(b).  The FLSA provides, in relevant part:

> An action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and on behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).  The provision "'establishes an 'opt-in' scheme whereby potential plaintiffs must affirmatively notify the court of their intentions to be a party to the suit.'"  *Butler v. Directsat USA, LLC*, 876 F. Supp. 2d 560, 565 (D. Md. 2012) (quoting *Quinteros v. Sparkle Cleaning, Inc.*, 532 F. Supp. 2d 762, 771 (D. Md. 2008) (citing *Camper v. Home Quality Mgmt., Inc.*, 200 F.R.D. 516, 519 (D. Md. 2000))).   Here, Plaintiffs have moved for conditional certification of a collective action on behalf of themselves and other alleged employees of TEG who performed "similar duties."  *See* Pls.' Mot. 1, E.C.F. No. 20.

Courts in the Fourth Circuit follow a two-step process in "deciding whether to certify a collective action pursuant to the FLSA."  *Butler*, 876 F. Supp. 2d at 566 (citing *Syrja v. Westat, Inc.*, 756 F. Supp. 2d 682, 686 (D. Md. 2010)); *see also Calder v. GGC-Baltimore, LLC*, No. BPG-12-2350, 2013 WL 3441178, at *1 (D. Md. Jul. 8, 2013) (citations omitted).  Relevant here, at the first stage of the process, the "notice stage," the "court makes a 'threshold determination of whether the plaintiffs have demonstrated that potential class members are similarly situated' such that court-facilitated notice to putative class members would be appropriate.'"  *Butler*, 876 F. Supp. 2d at 566 (quoting *Syrja*, 756 F. Supp. 2d at 686 (quotations omitted)).  This determination of appropriateness is "'left to the court's discretion.'"  *Id.*  (quoting *Syrja*, 756 F. Supp. 2d at 686

and citing *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989)); *see also Faust v. Comcast Cable Commc'ns Mgmt., LLC*, No. WMN-10-2336, 2011 WL 5244421, at *2 (D. Md. Nov. 1, 2011); *Camper*, 200 F.R.D. at 519.

A "group of potential FLSA plaintiffs is similarly situated if its members can demonstrate that they were victims of a common policy, scheme, or plan that violated the law." *Butler*, 876 F. Supp. 2d at 566 (citing *Mancia v. Mayflower Textile Servs. Co.*, No. CCB-08-0273, 2008 WL 4735344, at *3 (D. Md. Oct. 14, 2008)). Although the Fourth Circuit has not yet articulated a specific test for conditional certification, district courts have made clear that while a plaintiff "need only make a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law," a plaintiff may not "merely stand on the allegations of their complaint." *Faust*, 2011 WL 5244421, at *2 (citing *Marroquin v. Canales*, 236 F.R.D. 257, 259 (D. Md. 2006)); *see also Williams v. Long*, 585 F. Supp. 2d 679, 684 (D. Md. 2008) (stating that a preliminary factual showing includes "factual evidence by affidavits or other means, but mere allegations in the complaint would not suffice") (quotations omitted) (emphasis omitted). A plaintiff's burden, while not onerous, is also "not invisible," and a plaintiff "'must submit evidence establishing at least a colorable basis for their claim that a class of similarly situated plaintiffs exist.'" *Faust*, 2011 WL 5244421, at *2 (quoting *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 266 (D. Minn. 1991)). This requires more than mere "vague allegations with meager factual support." *Butler*, 876 F. Supp. 2d at 567.

3

**ARGUMENT**

A.   **Plaintiffs' Motion Must Be Denied Because They Have Failed To Meet Their Burden of Showing That The Group of Potential Plaintiffs Were Victims of A Common Policy, Scheme, or Plan That Violated The Law**

Plaintiffs have failed to provide a colorable basis for their claim that other similarly situated plaintiffs exist as is required under the FLSA.  First, Plaintiffs' Motion for Conditional Certification essentially parrots the allegations in their Complaint.  Second, Plaintiffs' only Declaration in support of their Motion contains a single unsupported conclusion that The Environmental Group ("TEG") has a company policy not to pay employees overtime.  Third, the handful of Mr. Fuentes' paystubs, which Plaintiffs attached to Mr. Fuentes' Declaration, actually indicate that Mr. Fuentes was paid for overtime hours at various times during the course of his employment, thereby contradicting his very assertion that TEG has a company policy not to pay overtime.  This meager and contradictory factual support falls far short of demonstrating that Plaintiffs and others "similarly situated" were "victims of a common policy or plan."  *See Faust*, 2011 WL 5244421, at *2.  As such, Plaintiff's Motion for Conditional Certification of an FLSA Collective Action and for Identification and Notification of Potential Class Members must be denied.

*i.  Plaintiffs Must Do More than Parrot the Allegations Set Forth in their Complaint*

Plaintiffs begin their argument for conditional certification by rewording the allegations contained within their Complaint.  Their Motion reiterates that "[d]uring at least the entire time that Plaintiffs were employed by Defendants, other persons employed by Defendants to perform similar work . . . were not paid at a time and a half rate despite having worked more than forty hours in a week."  *Compare* Mem. in Supp. 7, E.C.F. No. 20-1 *to* Compl. ¶ 10, E.C.F. No. 1. Plaintiffs claim that "this language is sufficient to permit the Court to make the required factual

4

determination that there are 'substantial allegations' that [members of] the proposed class" were victims of a common policy or plan." Mem. in Supp. 7. It is not, and Plaintiffs fail to meet the clear standard that courts in this District apply, which requires that Plaintiffs do more than "merely stand on the allegations of their complaint." *Faust*, 2011 WL 5244421, at *2 (citing *Marroquin*, 236 F.R.D. at 259).

> ii. *Mr. Fuentes' Declaration and Accompanying Pay Stubs Do Not Identify A Common Policy, Scheme, or Plan that Violated the Law*

The limited factual evidence offered by Plaintiffs to demonstrate that Plaintiffs and others were together victims of a common policy, scheme or plan which violates the FLSA consists of (1) the Declaration of Mr. Fuentes and (2) several of Mr. Fuentes' paystubs. Specifically, Mr. Fuentes states in his Declaration that he heard Mr. Hennessy and Mr. Herold state that "it was company policy not to pay overtime" and that it was his "understanding . . . that in most cases TEG did not pay overtime to its hourly employees when they worked more than forty hours in a work week." Fuentes Decl. ¶ 8–9, E.C.F. No. 20-2. This evidence offered by Plaintiffs is unavailing and indeed, Mr. Fuentes' own Declaration contradicts itself. In one breath, he states that it was "company policy" not to pay overtime to employees, and in the next, he says he "usually was not paid" overtime, which belies his allegation that TEG's policy was not to pay overtime. *Id.* ¶ 6, 8.

Plaintiffs also characterize Mr. Fuentes' paystubs as "documentary evidence" that Defendants' failure to pay Mr. Fuentes overtime was "a company policy." Mem. in Supp. 8. In fact, the pay stubs undermine Mr. Fuentes' allegations of a company-wide policy against paying overtime because the very paystubs that Plaintiffs offer as "documentary evidence" of the unlawful company policy indicate that he was paid overtime wages at various times during his employment. *See id.* The Fuentes Declaration does not provide factual support in favor of

conditional certification—it actually undermines Plaintiffs' assertion that members of the proposed class of plaintiffs were victims of an illegal common policy or scheme. Furthermore, nowhere in his declaration does Mr. Fuentes reveal the source of his "understanding…that in most cases TEG did not pay overtime." This type of conclusory allegation, without a scintilla of factual support, is insufficient.

Put simply, Plaintiffs' parroting of their Complaint and their contradictory declaration amount to no more than mere "vague allegations" with "meager factual support" regarding a common policy violative of the FLSA. Thus, conditional certification is not warranted.

Other Courts faced with similarly meager factual showings have denied conditional certification. For example, in *D'Anna v. M/A-Com, Inc.*, a field sales engineer brought suit under the ADEA against his employer and sought to proceed with the case as a collective action. 903 F. Supp. 889, 894 (D. Md. 1995). The court applied the test for conditional certification required under the FLSA and concluded that although the evidentiary requirements were "not stringent," the plaintiff nonetheless failed to make the "relatively modest factual showing" which points to a "company plan or policy to target older employees for termination." *Id.* at 894. The plaintiff in *D'Anna* claimed that he was terminated "on the basis of age and that his job duties were given to a younger person." *Id.* He identified eleven other employees over the age of 40 were terminated and claimed that those terminations were motivated by and proof of the defendant employer's intent to discriminate. *Id.* The court disagreed, finding the plaintiff's "broad and vague" allegations of class-wide discrimination insufficient for conditional certification.

In *White v. Rick Bus Co.*, the District of New Jersey determined that conditional certification of an FLSA action was not warranted where the plaintiff "provided mere generalizations and legal conclusions" in his Second Amended Complaint and "the same sort of

blanket assertions without factual matter" in his supporting Certification. 743 F. Supp. 2d 380, 388 (D.N.J. 2010) (applying a standard of review similar to the standard used in the District of Maryland). There, like in the present matter, the plaintiff failed to "put forth any relevant facts for the Court to consider, such as the names of any similarly situated employees," the years those employees worked, their job descriptions, or other "basic facts [which] are readily ascertainable at the pleading stage before discovery." *Id.* Additionally, the court rejected the plaintiff's Certification, which stated that the plaintiff knew of other individuals who were similarly situated "based upon [his] conversations with them and in many instances, the comparison of [their] weekly pay checks." *Id.* The court dismissed these allegations as unsupported hearsay and further characterized the Certification as "deficient in content." *Id.* at 388–89. Here, Plaintiffs offer much less than what the court in *White* deemed an insufficient factual showing.

In another illustrative case, *Flores v. Lifeway Foods, Inc.*, the Northern District of Illinois declined to authorize notice to putative FLSA collective action plaintiffs due to the plaintiffs' failure to "make even a modest factual showing" that would warrant the authorization. 289 F. Supp. 2d 1042, 1047 (N.D. Ill. 2003). There, the plaintiffs alleged that their employer failed to pay overtime wages, refused to pay employees' for all clocked hours and unlawfully rounded hours worked down to a more "advantageous" hour increment to the employer. *Id.* at 1043. The plaintiffs further provided affidavits of two plaintiffs, which stated that they and other employees routinely worked 50 to 60 hours each week, yet were only paid for eight hours each day. *Id.* at 1046. Notably, the plaintiffs in *Flores* offered more factual support than is present here and still, the court readily determined that the evidence put forth by the plaintiffs was not the type of "factual showing that would establish a colorable common policy or plan." *Id.*

Courts that have approved conditional certification have done so in cases with far greater factual support than is present here. For example, Plaintiffs attach an Order from a case in which the District Court for the District of Columbia granted conditional certification of a collective action brought by plaintiffs who were represented by Plaintiffs' counsel in this case.  *See Ayala Order*, ECF No. 20-4.  Notably, however, in that case, plaintiffs presented more factual specificity than has been provided here, and submitted six declarations in support, of their motion which the Court noted "aver these same facts."  *Ayala v. Tito Contractors*, No. 13-1603(JEB), 2014 WL 464786, at *2–3 (D.D.C. Feb. 6, 2014).  The six declarations specified the job responsibilities of the employees, their project locations, hours worked, and reiterated that they were not paid overtime and were instructed to underreport hours.  *See id.*  In contrast to the satisfactory factual specificity offered by plaintiffs in *Ayala*, Mr. Fuentes' Declaration concludes that there is a company policy not to pay overtime, includes pay stubs that show he was paid overtime, and ambiguously references "other TEG hourly employees and statements by TEG managers."  Fuentes Decl. ¶ 9.  Despite having done so in the past, Plaintiffs' counsel has, for unknown reasons, failed to provide the requisite level of factual support here.

Other courts that have granted motions for conditional certification have likewise relied on significantly more factual support than Plaintiffs have provided here. *See, e.g.*, *Margulies v. Tri-Cnty. Metro. Transp. Dist. of Oregon*, No. 3:13-cv-00475-PK, 2013 WL 5593040 (D. Or. Oct. 10, 2013) (finding conditional certification appropriate where the plaintiff "identified five categories of unpaid time" and submitted the declarations of ten bus operators and one train operator corroborating the claims); *Larson v. Rush Fitness Corp.*, No. 3:12-cv-109, 2013 WL 5350640, at *4–5 (E.D. Tenn. Sept. 23, 2013) (stating that the plaintiff "met his burden of making a modest factual showing that he is similarly situated to other employees" where he

8

presented affidavits from "three current and former employees who worked as membership managers" as well as supplemental affidavits from each); *Butler*, 876 F. Supp. 2d at 568 (holding that the plaintiffs made a "modest factual showing" where they presented: (1) an affidavit of a manager of the defendant employer articulating company directives regarding recording time worked and acknowledging that employees performed numerous tasks without pay; (2) declarations of each of the named plaintiffs attesting to, in abundant detail, the practices described by the manager; and (3) deposition testimony corroborating the information in the declarations); *Faust*, 2011 WL 5244421, at *3–4 (finding that the plaintiffs satisfied their modest burden where they submitted three declarations, one from each plaintiff and one from an opt-in plaintiff, copies of the plaintiffs' time records, emails sent from the defendant employer regarding time keeping and documents outlining the employer's time keeping policies). [1]

**B.     Plaintiffs Are Not Entitled to Disclosure of the Telephone Numbers of Potential Class Members**

Plaintiffs have failed to demonstrate that they need the telephone number of potential class members. Thus, in the interest of maintaining the privacy of those individuals and to avoid

---

[1] *See also Curtis v. Time Warner Entm't-Advance/Newhouse P'ship*, No. 3:12-cv-2370-JFA, 2013 WL 1874848 (D.S.C. May 3, 2013) (holding plaintiffs demonstrated that they were victims of an unlawful common policy where they made specific allegations and submitted an affidavit corroborating their allegations); *Ritz v. Mike Rory Corp.*, No 12 CV 367(JBW)(RML), 2013 WL 1799974, at *1–2 (E.D.N.Y. Apr. 30, 2013) (approving conditional certification where the plaintiff submitted two declarations that included the names of eight other similarly situated employees and articulated an abundance of factual detail); *Harvey v. AB Electrolux*, 857 F. supp. 815, 817 (N.D. Iowa 2012) (finding conditional certification warranted where the plaintiffs offered eight declarations); *Shakib v. Back Bay Rest. Group, Inc.*, No. 10-cv-4564(DMC)(JAD), 2011 WL 5082106 (D.N.J. Oct. 26, 2011) (granting conditional certification where plaintiffs set forth specific factual evidence of a common scheme and submitted sixteen affidavits of former employees); *Marroquin*, 236 F.R.D. at 260 (certifying collective action where the plaintiffs submitted at least nine detailed affidavits consistently describing tales of FLSA violations); *Enkhbayar Choimbol v. Fairfield Resorts, Inc.*, 475 F. Supp. 2d 557, 563–64 (E.D. Va. 2006) (granting conditional certification based upon one affidavit and allegations of more than 60 named plaintiffs).

the possibility of undue influence, TEG should not be required to disclose the telephone numbers of their current and former employees.

In support of their request for the telephone numbers, Plaintiffs submitted the declaration of Keria McNett. *See* McNett Decl., E.C.F. No. 20-3. In it, Ms. McNett states, in conclusory fashion, that Plaintiffs should be allowed to contact potential class members by telephone because "in her experience, the U.S. Mail…is not the most reliable means of communication with "low wage workers…whose principal language is Spanish." *Id*. at 3.

Ms. McNett offers no support for her classification of TEG's current and former employees as "low income" other than the fact that they are Hispanic. TEG Field Staff, like Plaintiffs and those whom they are seeking to add to their collective action, are Licensed Asbestos Supervisors and Workers. The wage rate for these types of TEG employees is from $15 to $25 per hour. *See* Hennessy Decl. ¶4, Ex. A. Certified payroll hourly rates are even higher. *Id*. Thus, these individuals are not low-income immigrant workers as Ms. McNett assumes in her declaration.

The only evidence submitted by Plaintiffs that in any way touches on the level of income of potential class members, Boris Fuentes' own Declaration, undermines Ms. McNett's conclusion. The pay stubs that are attached as an exhibit demonstrate that for the last two years of Mr. Fuentes' employment with TEG, he was being paid $20.50 per hour. In fact, in 2012, their final full year of employment with TEG, Mr. Fuentes and Ms. Mejia, who are married, earned more than $95,000 combined. *See* Hennessy Decl. ¶5. Similarly, they were on pace to earn more than $95,000, in 2013 having earned more than $32,000 during the first four months of that year. *Id.*

10

Further, Ms. McNett fails to explain her basis for concluding that TEG's current or former employees, the potential class, are experiencing "housing insecurity" or that they will not receive mail.    TEG's ***actual*** experience in using the U.S. mail to communicate with its employees has been contrary to Ms. McNett's speculations.   TEG regularly sends its employees W-2 forms, health insurance notices, holiday notices, pay stubs and other business communication by U.S. Mail and they are rarely returned undelivered nor do TEG's employees complain that they did not receive them.  *See* Hennessy Decl. ¶8.  Thus, there is no basis upon which the Court should assume that U.S. mail would not be an adequate method of giving notice to potential class members.

In fact, this Court, like other courts in Maryland and around the country, should be wary of requiring a defendant like TEG to disclose telephone numbers and allowing Plaintiffs to contact potential class members by telephone because of concerns of violation of privacy and undue influence.  In *Arevalo v. D.J.'s Underground, Inc.*, No. DLC-09-3199, 2010 WL 4026112 (D. Md. Oct. 13, 2010) the court refused to require disclosure of the telephone numbers of potential class members who were Hispanic.  This was the case despite plaintiffs' argument that they had had tried to contact potential class members by mail but had received a limited response. Id. at *2.  The court stated that plaintiffs' arguments did not "justify the risk inherent in permitting Plaintiffs to contact the putative class members by phone." *Id*.   The court also expressed concern with "direct contact between Plaintiffs' counsel and the collective class members and…the privacy interests that the putative plaintiffs might have."  *Id*. at *3.  Here, Plaintiffs should be required to attempt to contact potential class members by mail before TEG is required to disclose telephone numbers.  *See also Andrade v. Aerotek, Inc.*, No. CCB-08-2668, 2009 WL 2757099, *1at n.1 (D. Md. Aug. 29, 2009)(explaining that although plaintiffs were

11

recent college graduates and likely had moved, plaintiffs must first attempt to mail notice before seeking telephone numbers); *Shakib*, 2011 WL 5082106 at *6 ("The Court will not consider the release of…telephone numbers unless notification via first class mail proves insufficient."); *Harvey*, 857 F. Supp. 2d at 820 ("Moreover, I believe that there are legitimate concerns with improper solicitation, even unintentional, and privacy that counsel against providing telephone numbers without some showing that notice by first class mail is actually insufficient.");*Carter v. Indiana State Fair Comm'n*, No. 1:11-cv-852-TWP-TAB, 2012 WL 4481350 (S.D. Ind. July 17, 2012) ("In the event that telephone numbers and birth dates become necessary to locate putative plaintiffs, Plaintiffs may request that additional information. But Plaintiffs' assertion that it may be difficult to locate putative plaintiffs without such information is speculative and insufficient at this time to require telephone number and birth date disclosures."). *Lutz v. Huntington Bancshares Inc.*, No. 2:12-cv-01091, 2013 WL 1703361, *7 (S.D. Ohio Apr. 19, 2013) (holding that disclosure of telephone numbers was unnecessary unless and until plaintiffs made some showing that using last know addresses or email addresses did not enable them to provide reasonable notice to the class); *Larson v. Rush Fitness Corp.*, No. 3:12-cv-109, 2013 WL 5350640 (E.D. Tenn. Sept. 23, 2013) ("If however the mailed notice is returned, the Plaintiff may request that the Defendant prove the last-known telephone number and email of the potential opt-in plaintiff.").

Unless and until Plaintiffs demonstrate that sending potential class members notice via U.S. Mail is ineffective, TEG should not be required to provide the telephone numbers of its current and former employees.

**C.     Disclosure of Potential Class Members' Personal Information Should Be Limited to Plaintiffs' Counsel; Plaintiffs Themselves Should Not Have Access**

In the event that the Court decides to order disclosure of mailing addresses and/or telephone numbers of TEG's current and former employees, the Court's Order should specifically limit disclosure to Plaintiffs' counsel and prohibit such information from being shared with the Plaintiffs themselves.   There is no practical need for Plaintiffs themselves to be given access to this information as their counsel is capable of communicating with potential class members regarding the potential collective action.   Furthermore, TEG employees have reported to management that Mr. Fuentes has approached them aggressively about this lawsuit to the point that they have felt threatened.   *See* Hennessy Decl. ¶9.   Thus, allowing Mr. Fuentes to have access to TEG's employees' personal information, including their telephone numbers and addresses would be viewed as a betrayal by TEG's employees and would expose them to undue influence by Mr. Fuentes.

The Court should also prohibit pre-certification communication between Plaintiffs Boris Fuentes and Mirian Mejia and the potential class regarding their potential recovery and the scope of Defendants' potential liability so as to prevent them from making misrepresentations as to these issues. Hennessy Decl. ¶11.   *See also Maddox v. Knowledge Learning Corp.*, 499 F. Supp. 2d 1338 (N.D. Ga. 2007) (prohibiting plaintiffs from posting misleading and inappropriate information on their website).

**D.     Posting of the Notice Should Be Limited to TEG's Premises**

In their proposed Order, Plaintiffs request that the Court order TEG to post the approved Notice "in every establishment where TEG employees are employed."   Plaintiffs offer no detail as to what this means or what locations they are referring to.   TEG operates its business out of a single location.   Thus, should the court choose to order that a Notice be posted, posting the

13

Notice in the same location as all other state and federally mandated employment related notices should be adequate.

To the extent that Plaintiffs are requesting that the Notice be posted at every location where TEG's employees conduct asbestos and hazardous substance remediation, the request should be denied as TEG does not control these premises. *See Ayala* 2014 WL 464786 at *4. (holding that notice need only be posted in defendant's own offices).

### E.      The Notice Should Include Additional Language

This Court has broad discretion regarding the details of the notice sent to the potential opt-in plaintiffs. *See Butler*, 876 F. Supp. 2d at 575.  Should the Court decide to order that a Notice be issued, the Notice should include a neutral and non-technical reference to discovery obligations and possible potential participation in a trial. *Id.* (modifying notice to potential class members to address the discovery process and trial); *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 450 (S.D.N.Y. 2011) (requiring amendment of proposed notice to inform potential opt-in plaintiffs "of the possibility that they will be required to participate in discovery and testify at trial."); *Ritz v. Mike Rory Corp.*, No. 12 CV 367 (JBW)(RML), 2013 WL 1799974 (E.D.N.Y. Apr. 30, 2013) (ordering that the notice to potential class members include the following language: "[Y]ou may be asked to testify and provide information about the work you performed for defendants in order to help the court decide whether you are owed any money.").

Thus, paragraph VI. (3) of the proposed Notice should be modified to include the following language:

> You may be asked to testify during discovery and/or at trial and provide documents and information about your employment with The Environmental Group in order to help the court decide whether you are owed any money.

## CONCLUSION

Despite the Fourth Circuit's requirement that plaintiffs moving for conditional certification of a collective action set forth only a modest factual showing that they and the proposed class were, together, victims of an unlawful common policy, plan, or scheme, Plaintiffs rely on nothing more than the allegations contained in their Complaint and meager and contradictory factual support.  Thus, they have failed to meet their burden for conditional certification and their Motion must be denied.

Respectfully Submitted,

_____ /s/ Joseph B. Wolf_____
Malcolm S. Brisker (Federal Bar No. 26048)
msb@gdldlaw.com
Joseph B. Wolf (Federal Bar No. 27882)
jbw@gdldlaw.com
Goodell, DeVries, Leech & Dann LLP
One South Street, 20th Floor
Baltimore, Maryland  21202
Tel. (410) 783-4000
Fax (410) 783-4040
***Attorneys for Defendants***

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 31st day of March 2014, the foregoing was filed

electronically and served on:

      Matthew K. Handley
      Washington Lawyers' Committee for
       Civil Rights and Urban Affairs
      11 Dupont Circle, N.W., Suite 400
      Washington, D.C.  20036

      Matthew B. Kaplan
      The Kaplan Law Firm
      509 N. Jefferson Street
      Alexandria, VA  22205
      ***Attorneys for Plaintiff***

      /s/  Joseph B. Wolf
      Joseph B. Wolf

4851-6436-1241, v. 1

16