UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| BORIS FUENTES, *et al.*, <br> for himself and for others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> THE ENVIRONMENTAL GROUP, INC., *et al.*, <br><br> Defendants. | Civil Action No. 8:13-3093-JFM |

**REPLY IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION OF AN FLSA COLLECTIVE ACTION AND FOR IDENTIFICATION AND NOTIFICATION OF POTENTIAL CLASS MEMBERS**

Plaintiffs respectfully submit this Reply in further support of their Motion for Conditional Certification of an FLSA Collective Action, Dkt. 20, and in response to Defendants' Opposition ("Opp'n"), Dkt. 21, to Plaintiffs' Motion.

As Defendants concede, a plaintiff moving for conditional certification in a Fair Labor Standards Act ("FLSA") case faces a minimal burden. Opp'n at 3. Plaintiffs easily make a showing sufficient for such certification by, among other things, providing evidence that Defendants stated that they had a general policy of not paying overtime and that they did not, in fact, pay such overtime. Plaintiffs are

filing with this Reply additional Declarations by both Plaintiffs to address factual issues raised in Defendants' Opposition.

There is no legal or factual basis for Defendants' request that the Court limit Plaintiffs' ability to discuss this case. Moreover, Defendants should be required to disclose the telephone numbers of Plaintiffs' co-workers—Plaintiffs are entitled to this information because these individuals are potential class members and, separately, because they are potential witnesses in this matter. Plaintiffs do not oppose Defendants' requests with respect to adding additional language to the proposed notice or to the posting of that notice.

## I. PLAINTIFFS HAVE MADE THE SHOWING REQUIRED FOR PRELIMINARY CERTIFICATION

### A. The Parties Largely Agree on the Requirements for Preliminary Certification

Defendants acknowledge that, on a motion for initial certification in an FLSA collective action, Plaintiffs "need only make a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." Opp'n at 3 (quoting *Faust v. Comcast Cable Communications Mgmt., LLC*, 2011 U.S. Dist. LEXIS 125949, at *7 (D. Md. Nov. 1, 2011)). Defendants correctly note that Plaintiffs' burden at this stage is "not onerous" and that they need only "provide a colorable basis for their claim" that initial certification should occur. Opp'n at 3-4.

## B. Plaintiff's Easily Meet Their Limited Burden

Plaintiffs easily make the required showing that, in this case, there are "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Romero v. Mountaire Farms, Inc.*, 796 F. Supp. 2d 700, 705 (E.D.N.C. 2011). Most notably, Plaintiff Fuentes testifies in his Declaration submitted with Plaintiffs' Motion that, based on his personal knowledge, "[Defendant] Mr. Hennessey and [Defendant] Mr. Herold said that it was company policy not to pay overtime," Fuentes Decl., Dkt. 20-2, ¶¶ 1, 8. In a supplemental Declaration filed with this Opposition Fuentes clarifies that he personally heard Fuentes and Herold make these statements. Accompanying Fuentes Supp. Decl. ¶ 2. Moreover, it is reasonable to infer that these two senior company officials (and, in Hennessey's case, company owner) spoke for the third defendant, The Environmental Group ("TEG"). Defendants' statements that they had a policy of not complying with the FLSA is strong evidence that they had such a policy. Notably, while Hennessey filed an evidentiary declaration in conjunction with Defendants' Opposition, Dkt. 21-1, neither he nor Herold deny making such statements.

Fuentes also testifies that "based on my own experience, my communications with other TEG hourly employees and statements by TEG managers," "in most cases TEG did not pay overtime [to] its hourly employees

3

when they worked more than forty hours in a work week." Fuentes Decl., Dkt. 20-2, ¶ 9. He further discloses that, while employed by Defendants, he regularly worked more than forty hours per week, but was generally not paid for that time. He backs this up with sample paystubs attached to his declaration which show the following:

- That, during the workweek from September 26, 2008 through October 2, 2008, Fuentes worked 42 hours, each of which TEG paid at the straight-time rate of $16.75 per hour.
- That, during the workweek from August 7, 2009 through August 13, 2009, Fuentes worked 60 hours, each of which TEG paid at the straight time rate of $17.50 per hour.
- That, during the workweek from August 28, 2009 through September 3, 2009, Fuentes worked 54 hours, each of which TEG paid at the straight time rate of $17.50 per hour.
- That, during the workweek from November 12, 2010 through November 18, 2010, Fuentes worked 47 hours, each of which TEG paid at the straight time rate of $19.50 per hour.
- That, during the workweek from July 20, 2012 through July 26, 2012, Fuentes worked 57 hours, each of which TEG paid at the straight time rate of $20.50.
- That, during the workweek from April 5, 2013 through April 11, 2013 Fuentes worked 47 hours, each of which TEG paid at the straight time rate of $20.50.

*Id.* ¶ 10 and attachments.

Defendant Mejia's Declaration in support of this Reply also indicates that she also frequently worked overtime hours and was not paid for those hours at the overtime rate. Accompanying Decl. of Mirian Mejia ¶¶5-7. Attached to this Declaration are paystubs which show the following:

4

- That, during the workweek from April 27, 2012 through May 3, 2012, Mejia worked 69.50 hours, each of which TEG paid at the straight-time rate of $15.00 per hour.
- That, during the workweek from November 30, 2012 through December 6, 2012, Mejia worked 48.75 hours, each of which TEG paid at the straight-time rate of $15.00 per hour.

*Id.* ¶ 7 and attachments.

Even absent Fuentes' testimony that failure to pay overtime was a companywide practice, it is reasonable to infer, at least for purposes of preliminary certification, that Defendants' overtime payment practices were similar for all employees engaged in similar work. *See Faust*, 2011 U.S. Dist. LEXIS 125949, at *14 (preliminarily certifying unpaid overtime action, noting that "[t]here is no reason to suspect that [three employees whose declaration indicated the defendants failed to pay them overtime] were singled out and that other employees at this facility were receiving adequate compensation for work they were required to complete").

According to Defendants, however, the Court must ignore Fuentes' initial Declaration because it "contradicts itself.  In one breath, he states that it was 'company policy' not to pay overtime to employees, and in the next, he says he 'usually was not paid' overtime." Opp'n at 5.  But sporadic payment of overtime by TEG is consistent with Fuentes' testimony that, "in most cases" TEG did not do so. Decl. ¶¶ 6, 9.  Plaintiffs need not, at least at this stage, explain why Defendants

5

occasionally complied with their FLSA obligations despite their stated intention of not doing so.[1]

The fact that TEG is small—twenty or fewer persons performed hazardous materials work, Fuentes Decl., Dkt. 20-2, ¶ 7—further supports Plaintiffs' ability to know about a company-wide overtime policy. Given the limited number of employees involved, Fuentes' claim of personal knowledge of practices affecting coworkers is entirely reasonable.

### C.     The Cases Defendants Cite Do not Support Their Position

Defendants point to several cases to support their view that Plaintiffs have not made a sufficient showing for provisional certification. In most of these cases, however, certification was granted. Moreover, it appears that in none of these cases was the court presented with evidence that each Defendant admitted, as Defendants did here, to a policy of violating the law. Furthermore, unlike Plaintiffs here, plaintiffs in the Defendant-cited cases apparently never submitted employer-prepared paystubs confirming a failure to pay overtime.

Apparently unable to find a relevant Fourth Circuit decision denying preliminary certification, Defendants highlight a nineteen-year-old Age

---

[1] Plaintiffs expect that discovery will disclose that Defendants paid overtime in a small number of instances in which, pursuant to the terms of certain cost-plus contracts, they could pass overtime costs onto the person who had contracted for TEG's services. Usually, however, TEG did not have such contracts.

Discrimination in Employment Act (ADEA) case, *D'anna v. M/A-COM, Inc.*, 903 F. Supp. 889 (D. Md. 1995). *D'anna* denied collective action certification because "[p]laintiff has done nothing more than identify eleven individuals who are over forty years of age and who may have been terminated" by a defendant.[2] *Id.* at 894. This was insufficient—there is nothing inherently unlawful about dismissing individuals over the age of forty, and there was no evidence of a discriminatory motive. In this case, in contrast, Defendants' stated policy of not paying overtime is facially illegal, and moreover, documentary evidence indicates that overtime owed was not, in fact, paid.

The two out of circuit cases Defendants emphasize are similarly inapplicable. In *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042 (N.D. Ill 2003), the court refused to certify a class, noting that the evidence before it indicated only that "two of Lifeway's employees … were not paid for one hour and one-half hour, respectively, of overtime wages," which was insufficient to make even an initial showing of "a common policy or plan."[3] *Id.* at 1046. The evidence here of "a common policy or plan" is, of course, much greater.

---

[2] An ADEA collective action is governed by the collective action provision of the FLSA, 29 U.S.C. § 216(b). *D'Anna*, 903 F. Supp. at 892 n.2.

[3] *Flores* appears also to have been influenced by an exaggerated view of the similarities between FLSA collective actions and Rule 23 class actions, in which a higher certification standard applies. *Compare Flores*, 289 F. Supp. 2d at 1044 (describing class actions and collective actions as "similar," "[i]n fact, numerous courts have referred to a *§ 216(b)* collective action as a 'spurious class action.'")

In *White v. Rick Bus Co.*, 743 F. Supp. 2d 380 (D.N.J. 2010), the court based its certification denial largely on plaintiffs' failure to provide the "names of any similarly situated employees, the years in which those employees worked, or … job descriptions for [employees]." *Id.* at 388. It asserted that this information was "readily ascertainable at the pleading stage before discovery," *id.*, but did not explain why this was so or why such information was be necessary at such a preliminary juncture. Moreover, *White*'s insistence that such information should have been produced is inconsistent with its own circuit court's subsequently expressed view that preliminary FLSA certification requires only "some evidence, beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy affected [plaintiffs] and the manner in which it affected other employees." *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 193 (3d Cir. 2011) (internal quotation omitted), *rev'd on other grounds* 133 S. Ct. 1523 (2013).

## II.  THERE ARE NO GROUNDS TO MUZZLE PLAINTIFFS

The Court should deny Defendants' request that it "prohibit pre-certification communication between Plaintiffs … and the potential class regarding their

---

*with Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1530 (2013) (explaining fundamental differences between Rule 23 class actions and collective actions).

potential recovery and the scope of Defendants' potential liability so as to prevent them from making misrepresentations as to these issues." Opp'n at 13.

As an initial matter, it is unclear what Defendants want. For instance, it is uncertain whether they want the prohibition they seek to apply to the individual Plaintiffs only, or to their attorneys as well. Moreover, the request to prohibit "pre-certification" communications makes little sense. If the Court grants Plaintiffs' pending Motion, certification will have occurred and banning pre-certification communications would be meaningless. If the Motion is denied there would be no reason to prevent Fuentes and Mejia from talking about a case in which they were the only plaintiffs.

Additionally, the lone case Defendants cite on this issue, *Maddox v. Knowledge Learning Corp.*, 499 F. Supp. 2d 1338 (N.D. Ga. 2007), strongly supports denial of their request. In ruling on a request by defendants in a collective action case to limit pre-certification communications between plaintiffs' counsel and class members, *Maddox* emphasized that

> [c]ourts have been mindful not to run afoul of plaintiffs' and their lawyers' free speech rights in their restrictions of pre-notice communications. … the *First Amendment* requires the Court to tailor any restrictions on a party's ability to speak with absent class members. Courts must base any order limiting communications between parties and potential class members on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of parties.

9

*Id.* at 1343 (citations and quotations omitted). Applying this reasoning, the court ordered modification of inaccurate statements on a website, but concluded that "it would be an abuse of discretion to totally proscribe plaintiffs in a *Section 216(b)* collective action from communicating with potential class members … prior to conditional certification." *Id.* at 1344.

In this case there has been no showing of any false or inaccurate statements. Defendants cite only to a claim by Hennessy that "TEG employees have reported to me that Mr. Fuentes has also made statements to them regarding how much he will recover from TEG and the negative effect the lawsuit will have on TEG's business." Opp'n at 13 (citing Hennessey Decl. ¶ 11, Dkt. 21-1). Defendants vigorously dispute the accuracy of this hearsay account of statements supposedly made by unnamed persons, but, in any event, what Hennessey claims he was told was said is not inherently false or misleading. Moreover, it would be unjust to limit what Plaintiffs, who will receive no financial gain if others join this lawsuit, can say while imposing no reciprocal restriction on Defendants, who are in daily contact with their current employees and who have a strong financial incentive to discourage them from joining this case.

Another relevant factor is the reality that, given the small number of class members, the need to determine the number of hours Plaintiffs actually worked and Defendants' stated intention to argue that their own time records are inaccurate and

that Plaintiffs engaged in workplace misconduct, potential class members are likely to have discoverable evidence. Plaintiff's counsel is entitled to discuss relevant factual issues with potential witnesses who are willing to speak with them.

### III. DEFENDANTS SHOULD BE REQUIRED TO PROVIDE CLASS MEMBERS' TELEPHONE NUMBERS

Purportedly motivated by a desire to protect the privacy of putative class members, Defendants argue that "[u]nless and until Plaintiffs demonstrate that sending potential class members notice via U.S. Mail is ineffective, TEG should not be required to provide the telephone numbers of its current and former employees." Opp'n at 12. Although Plaintiffs' counsel do not intend to contact potential class members by telephone to advise them of this lawsuit unless there is no response to mailed correspondence, Defendants should provide telephone numbers now, obviating the need for further motion practice on this issue. Any infringement on privacy rights would be minimal and, in any event, these phone numbers are the proper subject of merits discovery.

Plaintiffs' counsel are not telemarketers and any intrusion privacy interests by disclosure of these numbers is substantially outweighed by potential class members' interest in learning about litigation in which they may have a significant financial stake. Moreover, Defendants do not dispute the testimony of Keira McNett, an experienced attorney with expertise in working with low income

11

immigrants, that the U.S. mail is an inefficient way to communicate with low income Hispanics employees.  Decl. of Keira McNett, Dkt. 20-3 (Mar. 12, 2014) Fed. R. Evid. 702-03 (admissibility of expert witness testimony).  Instead Defendants claim class members' income is not "low."  Opp'n at 10.  But Plaintiff Mejia earned only about $34,000 in 2012, surely a difficult income to live on in the metropolitan Washington, D.C. area.[4]  Mejia Decl. ¶ 4.

Moreover, as the principal case Defendants rely on observes, "[c]ourts considering whether to compel the defendants in an FLSA collective action to allow plaintiffs' counsel to provide notice by phone have differed in their approaches.  Many have permitted phone contact as a matter of course, requiring the defendants to provide telephone numbers … at the time of conditional certification."  *Arevalo v. D.J.'s Underground, Inc.*, No. DKC 09-3199, 2010 U.S. Dist. LEXIS 109193, at * 5 (D. Md. Oct. 13, 2010) (collecting cases supporting this view).  *Arevalo* sided with those courts reluctant to order such disclosure, in part because, in that case, notification of potential class members "by publication and through Hispanic community organizations," was a viable alternative.  *Id.* at *7.  That is not true here, given the small class size and, even under *Arevalo*'s

---

[4] Defendants' view that the Court should look at the *combined* earnings of Fuentes and Mejia rather than what individual TEG employees earn, Opp'n at 10, is self-evidently misleading.

restrictive view, whether to authorize disclosure of phone numbers to alert potential class members depends on the facts of each case.

An important consideration in this case is that, as explained above, class members here are potential fact witnesses. Regardless of appropriateness of disclosing their phone numbers for notification purposes, because these individuals have discoverable information their numbers must, if requested, be disclosed to Plaintiffs during merits discovery, regardless of whether a class is certified. *See* Fed. R. Civ. P. 26(a)(1)(A)(i) (in initial disclosures parties must provide "the name and, if known, the address ***and telephone number*** of each individual likely to have discoverable information") (emphasis added).

## IV. <u>PLAINTIFFS DO NOT OPPOSE DEFENDANTS PROPOSAL REGARDING POSTING OF THE NOTICE</u>

Given Defendants' representation that TEG operates out of a single place of business, Opp'n at 13, Plaintiffs agree that the approved Notice to potential class members need only be posted at this single location, provided it is prominently posted.

## V. <u>PLAINTIFFS DO NOT OPPOSE PROPOSED ADDITIONAL LANGUAGE IN NOTICE</u>

Plaintiffs do not object to the language that Defendants propose to add to the Notice, Opp'n at 14, advising potential class members that they may be asked to provide evidence in this matter.

Dated:  April 17, 2014		Respectfully submitted,

   /s/Matthew B. Kaplan
Matthew B. Kaplan
D. Md. No. 18724
The Kaplan Law Firm
509 N. Jefferson St.
Arlington, VA 22205
Telephone:  (703) 665-9529
Fax:  (888) 958-1366
Email: mbkaplan@thekaplanlawfirm.com
*Counsel for Plaintiffs*

Matthew Handley
D. Md. Bar No. 18636
The Washington Lawyers Committee for
  Civil Rights and Urban Affairs
11 Dupont Circle, Suite 400
Washington, DC 20036
Phone: (202) 3190-1000
Email: matthew_handley@washlaw.org
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the date indicated below, the foregoing document (including any attachments) was filed via the Court's ECF system, which will transmit it to all Parties appearing in this matter.

    /s/Matthew B. Kaplan
Matthew B. Kaplan

Date:  April 17, 2014